Amw / MP

# United States Court of Appeals for the Fourth Circuit

Rebecca Thornock, Plaintiff-Appellant

v.

Internal Revenue Service, et al., Defendants-Appellees

Case # 25-1518

## INFORMAL OPENING BRIEF

### I. Statement of Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 under the collateral order doctrine, as the district court's denial of Plaintiff's motion to recuse the presiding judge from further proceedings implicates substantial constitutional questions that are effectively unreviewable on appeal from final judgment.

### II. Statement of the Issues

1. Whether the district court erred in denying Plaintiff's motion for recusal despite evidence of judicial bias and procedural misconduct and both applying and then subsequently staying a preliminary injunction based upon the rulings of other courts rather than on rule 65.

2. Whether the court's conduct, including an ex parte meeting with government counsel and post-hoc relabeling of a hearing, violated due process.

3. Whether the exhaustion requirement applies where the termination occurred under a now-challenged unlawful Reduction in Force (RIF) scheme.

## III. Statement of the Case

This appeal arises from the denial of Plaintiff's motion to recuse the district court judge after a pattern of procedural irregularities and judicial hostility. On April 23, 2025, the Court forced a 12-minute ex parte meeting with government counsel after Plaintiff filed a formal Notice of Nonappearance citing due process concerns. Following that meeting, the Court issued mechanical, unexplained denials of seventeen constitutional motions, culminating in a Rule 11 warning that further confirmed bias. While ignoring clear signs of bad faith litigation from the opposing party from the beginning of this case and requests for sanctions from the Plaintiff.

Plaintiff originally requested a hearing based upon the possibility of being RIFed in early April, but the court ignored this deadline and unilaterally forced and open ended hearing on the 23rd. Notably, the RIF's have since had an injunction placed against them by other courts on May 23rd with AFL-CIO v. Trump. A ruling this court refused to give in a timely manner. As this court has shown that it is only willing to rule in this case based upon the rulings that other courts have made, regardless of the direct facts of this case.

Plaintiff filed a motion to preserve appellate rights, a motion for recusal, and a motion to stay the proceedings. The district court denied all three and continued to adjudicate while refusing to acknowledge the constitutional magnitude of the April 23 hearing.

Furthermore, the court previously threatened the Plaintiff for receiving help from her spouse, declaring that his assistance amounted to the unauthorized practice of law even

though he has not spoken for her in court or signed documents on her behalf. In contradiction to Collins v. Tabet 806 F.2d 415 (4th Cir. 1986) where it is claimed that to equate familial support with unauthorized practice of law would undermine the very concept of pro se litigation, which often relies on family assistance during times of hardship. The plaintiff was requesting a court appointed attorney based on the complexity of this case, a confirmed IFP status that this same judge granted under similar circumstances in a mirroring case with the unlawful termination of her husband, and the confirmed serious injury of her husband whom she has been dependent on for certain assistance during this litigation. The court responded with threats of sanction for the unlawful practice of law, instead of assistance.

## IV. Statement of Facts

Plaintiff, a probationary federal employee, was terminated under circumstances now believed to fall within an unlawful RIF executed by executive order. Recent federal rulings, including Judge Illston's nationwide injunction against mass agency terminations, reinforce that these firings may have violated both due process and Congressional authority. Furthermore, rather than issuing an injunction based upon Rule 65, the district court gave the injunction based upon the rulings of the other courts and subsequently issued a stay based upon that same logic. Protecting the image of the court rather than issuing any sort of substantive and meaningful rulings.

Furthermore, the Court's April 23 meeting with government counsel, post-hoc relabeling of the hearing, and refusal to consider Plaintiff's filings on the record reflect an entrenched procedural bias that undermines confidence in judicial neutrality. This meeting appeared to be a procedural trap as it looks as though the court left the door open for the defense to

submit live motions for dismissal that could not be easily disputed in real time by the Plaintiff. Such as the motion to dismiss based upon exhaustion, that was submitted by the defense after this appeal was submitted. Seeming to set the case up for premature closure based on coordinated procedural traps rather than addressing the merit. Furthermore, it was relabeled as a "Status Conference" after the fact (post hoc). Appearing to attempt to cover up the true nature of the hearing, which the court referred to the meeting as on several occasions.

## V. Argument

### A. Denial of Recusal Was Error Under 28 U.S.C. § 455

Under 28 U.S.C. § 455(a) and (b)(1), a judge must disqualify himself where his impartiality might reasonably be questioned or where there exists personal bias or prejudice. The Court's conduct—conducting a hearing without Plaintiff, denying seventeen motions en masse, and relabeling substantive actions as procedural—creates both the appearance and substance of judicial bias.

### B. Due Process Was Violated by the Court's Conduct

The Court's April 23 meeting, refusal to rule on motions substantively, and issuance of a Rule 11 warning without context demonstrate a fundamental deprivation of the right to be heard and fairly adjudicated.

### C. Exhaustion Is Not Required for Constitutionally Defective Mass Layoffs and RIF Terminations

Recent rulings halting the Trump administration's executive-ordered RIFs validate Plaintiff's position that exhaustion was either impossible or legally unnecessary. Plaintiff's

termination cannot be treated as routine when it occurred under a now-stayed, likely unconstitutional framework.

## VI. DRP Was Signed Under Duress and Is Unenforceable

While Plaintiff Rebecca Thornock did sign the Dispute Resolution Process (DRP) agreement as of May 29th, 2025, she did so under severe and escalating duress. On March 19, 2025, her husband was involved in a serious car accident and has been unable to work since. Although a workers' compensation claim was filed promptly, no interim compensation has been issued. As of June 2, 2025, this family of five has been without meaningful income for over two months, relying solely on Plaintiff's limited opportunities to sustain the household.

Faced with this urgent financial crisis, Plaintiff accepted a short-term contract position through Robert Half that will last until August. However, she was informed that to remain eligible for any IRS compensation while taking the position, she would be required to sign the DRP. Signing was not a matter of free will—it was a financial necessity under coercive terms. This constitutes economic duress, defined in Totem Marine Tug & Barge Co. v. Alyeska Pipeline Service Co., 584 P.2d 15 (Alaska 1978), as a wrongful or coercive act that leaves the victim with no reasonable alternative.

The work environment surrounding the Plaintiff at the IRS only intensified the pressure. Employees were expected to report for duty despite having no tasks. They sat in limbo—idle for days—surrounded by colleagues openly voicing fear and despair about anticipated RIFs and terminations. There was no meaningful communication from leadership, only silence and instability. The psychological toll of this environment cannot be overstated. In

Odorizzi v. Bloomfield School District, 246 Cal. App. 2d 123 (1966), the court recognized that even absent overt threats, an emotionally coercive environment can invalidate a contract.

In addition, Plaintiff reasonably turned to the judicial system to intervene and provide relief from the illegal and destabilizing Reduction in Force (RIF) process. As described earlier the Court scheduled a proceeding on May 23, 2025 while essentially denying the request for RIF protection, purportedly to allow participation, but the structure of the hearing was ambiguous and undefined, creating the real possibility of procedural ambush. At that point, Plaintiff had already seen her requests for RIF protection denied, and without any clarity or security regarding how the proceeding would unfold, she submitted a Notice of Non-Appearance to avoid being blindsided by opposition tactics.

The Court then proceeded with a 12-minute ex parte hearing, without the Plaintiff present, and again failed to grant any form of relief. This maneuver—ambiguous structure, denial of aid, and an ex parte result—created a judicial dead-end that functionally reinforced the coercive position the Plaintiff was already in. Courts have made clear that waivers of statutory rights must be knowing, voluntary, and intelligent. See Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). When courts fail to provide even procedural stability, such waivers become presumptively unreliable.

Further, in Brookdale Senior Living Inc. v. Stacy, 27 F.4th 876 (6th Cir. 2022), the court found an arbitration agreement unenforceable where the plaintiff was pressured into signing in a vulnerable moment, citing emotional and financial stress as relevant coercive factors. Plaintiff's situation here is no less compelling: she was balancing economic survival, toxic work conditions, and a judiciary unwilling to enforce basic procedural fairness.

Under the totality of these conditions, the Plaintiff's signature on the DRP cannot be considered valid or enforceable even with the seven day right of revocation. It was executed not as an act of informed agreement, but under extreme financial, psychological, and procedural duress. Enforcement of the DRP in this context would amount to judicial ratification of coercion, and should be rejected on both legal and public policy grounds.

## VII. Relief Requested

Plaintiff respectfully requests that this Court reverse the district court's denial of the motion to recuse, declare that the court's April 23 proceeding constituted a due process violation, remand for further proceedings before a new judge, declare that signing the DRP does not waive any future rights to litigation on this issue, declare that limited assistance from a spouse is permitted and that the court erred in denying a court appointed attorney for this case. The plaintiff further requests any sanctions or other relief that the court sees fit.

Respectfully submitted,

Rebecca Thornock    *Rebecca J Thornock*

Pro Se Plaintiff-Appellant

May, 29th, 2025